**FILED**
IN CLERK'S OFFICE
**U.S.** DISTRICT COURT, E.D.N.Y.

★ ⸺ 2 ̓ ̓ ̓ ★

**BROOKLYN OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

CHRISTINE S. CLARKE,

                   Plaintiff,

    -against-

MOUNT SINAI HOSPITAL, JOSE GOMEZ,
GRETHEL MARKS, OFFICER DELIZ,
MS. THOMPSON,

                  Defendants.
----------------------------------------------------------X

**REPORT AND RECOMMENDATION
05 CV 566 (CBA)(LB)**

**BLOOM, United States Magistrate Judge:**

## INTRODUCTION

Plaintiff, Christine Clarke, brings this employment discrimination action alleging sexual

harassment and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§

2000e to 2000e-17 ("Title VII"). The defendants move for summary judgment under Fed. R. Civ.

P. 56.[1] The Honorable Carol B. Amon referred the motion to the undersigned for a Report and

Recommendation pursuant to 28 U.S.C. § 636(b). For the reasons discussed below, I recommend

that defendants' motion for summary judgment should be granted in its entirety and that this action

should be dismissed.

---

[1] Defendants provided plaintiff with the requisite "Notice To Pro Se Litigant Opposing Motion For
Summary Judgment" setting forth plaintiff's obligations in opposing a motion for summary judgment
pursuant to Local Civil Rule 56.2 along with a copy of Fed. R. Civ. P. 56.

## BACKGROUND[2]

**Plaintiff's Employment History with Mount Sinai Hospital**

Plaintiff was employed by defendant Mount Sinai Hospital[3] from March 1990 until January 2002 and was a member of the Local Union 1199. Deposition of Christine Clarke, Exhibit B ("Clarke Dep.") 128-31, 164.[4] Plaintiff alleges that she was sexually harassed by a supervisor, Jose Gomez from 1999 until her termination in 2002. Id. at 46. Plaintiff further alleges that she was terminated because she rebuffed this supervisor's sexual advances. Complaint, State Division of Human Rights, Exhibit U ("DHR Complaint") at ¶¶ 3, 4. Defendant contends that plaintiff was terminated in January 2002 because she assaulted another employee. In addition, defendant argues that plaintiff never complained that she was being sexually harassed despite established procedures for complaining about such conduct. Plaintiff also alleges that defendant retaliated against her after she was discharged by giving negative references to prospective employers. Clarke Dep. 433. Defendant denies giving negative references for plaintiff. Kearney Declaration ("Kearney Decl.") ¶ 6.; Clarke Dep. 231-33.

---

[2] Plaintiff has failed to contest any of the facts in defendant's Rule 56.1 statement with particularity and as such, the court may deem all the facts in defendants' Rule 56.1 statement admitted. See Loc. R. 56.1(c). Generally, a "plaintiff['s] failure to respond or contest the facts set forth by the defendant in their Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." Jessamy v. City of New Rochelle, 292 F. Supp. 2d 498, 504-05 (S.D.N.Y. 2003) (quoting NAS Elecs., Inc. V. Transtech Elecs. PTE Ltd., 262 F. Supp. 2d 134, 139 (S.D.N.Y. 2003). However, given plaintiff's *pro se* status, the Court will deem admitted only those facts in defendant's Rule 56.1 statement that are supported by admissible evidence and not controverted by other admissible evidence in the record. See Jessamy, 292 F. Supp. 2d at 504.

[3] Defendants will be collectively referred to herein as "defendant" or "Mount Sinai".

[4] The referenced exhibits are annexed to the Declaration of David R. Marshall.

**Mount Sinai's Policies and Procedures Regarding Sexual Harassment and Retaliation**

Mount Sinai has established various written policies that prohibit sexual harassment and retaliation for complaining about sexual harassment. Kearney Decl. ¶ 4. Anti-harassment policies and complaint procedures appear in materials such as defendant's Employee Handbook, the Human Resources Policy Manual and the Human Resources Guide to Significant Policies." Id. Human Resource Policy # 13.4 (Harassment & Sexual Harassment) ("Exh. D") provides a detailed definition of sexual harassment and states that "[t]he creation of a hostile environment or the sexual harassment of any employee, by either a supervisor or coworker, is unacceptable conduct and is not tolerated by the Medical Center." Id. at ¶ A. The policy also makes clear that "[n]o employee is penalized in any manner nor faces any kind of retaliation for the good faith submission of a complaint alleging harassment or sexual harassment." Id. The collective bargaining agreement ("CBA") between defendant and plaintiff's union, 1199/SEIU, ("Union"), also contains a "No Discrimination" provision which specifically provides that "sexual harassment will not be permitted or tolerated." See Collective Bargaining Agreement Between the League of Voluntary Hospitals and Homes of New York and 1199 SEIU ("Exh. E") 13-14.

Mount Sinai also maintains written procedures for complaining about sexual harassment. Kearney Decl. ¶ 4; Code of Conduct and Business Ethics ("Exh. F"); Human Resources Guide to Significant Policies ("Exh. G"). In addition, Policy 13. 4 states "any employee who believes that he or she has been or is being subjected to harassment or sexual harassment is encouraged immediately to submit a written complaint to the Labor Relations Board." Exh. D at ¶ B. The Code of Conduct and Business Ethics states that employees should come forward with any information regarding sexual harassment or other policy or code violation and that reports could

be made in person, by telephone or in writing to a supervisor, the Human Resources and Labor Relations Department, the Compliance and Ethics Office or the Compliance Helpline. Exh. F; Exh. G. Finally, the CBA provides a grievance and arbitration process through which union member employees can seek redress for violations of their rights under the agreement. Exh. E pp. 78-79.

New hires at Mount Sinai are given an Employee Handbook that contains the sexual harassment policies and procedures and "receive an orientation that includes a discussion of the Hospital's sexual harassment policy and complaint procedures, and are informed of the Human Resources Policy Manual and Rules of Conduct, including where to find them." Kearney Decl. ¶ 5. In addition, Kearney avers that "[p]eriodically, Mount Sinai distributes pamphlets regarding workplace issues, including sexual harassment." Id.; Clarke Dep. 209. The Human Resources Policy Manual is available to employees on the Mount Sinai intranet, in the Labor Relations Office and in the office of each employee's department heard. Kearney Dec. ¶ 5; Marks Decl. ¶ 3; Clarke Dep. 163. Plaintiff testified that the Human Resources Reference Guide dated June 25, 2001, which states that employees should familiarize themselves with workplace polices including the prohibitions against sexual harassment and workplace violence, was posted "up on the bulletin boards in certain areas of medical records." Id. 228-31; Exh. G. In addition, plaintiff testified that the Union distributed the CBA to its members, including plaintiff. Id. 171-72.

Plaintiff testified that she was aware of defendant's policies and procedures regarding sexual harassment during the tenure of her employment. For example, plaintiff stated that she knew that defendant utilized an employee handbook, an employee policy and procedure manual and an employee code of ethics. Id. 161-164, 204-210. Although she denies actually reading any

4

of these materials, plaintiff testified that defendant provided her with a "Code of Conduct and Business Ethics" pamphlet prior to her termination and that she was provided with pamphlets concerning Mount Sinai's rules of conduct and codes of ethics. Id. 209-10, 227. Furthermore, plaintiff stated that she knew that defendant offered its employees a Helpline available for employment related complaints and that the collective bargaining agreement prohibited discrimination and sexual harassment. Id. 168. Finally, plaintiff acknowledged she was aware of these procedures and stated that she had utilized the grievance procedure to grieve a warning letter that had been placed in her employment file. Clarke Dep. 175-87.

## Mount Sinai's Rules of Conduct

Mount Sinai's Rules of Conduct are contained it its Human Resource Policy Manual. See Human Resources Policy: Medical Center Rules of Conduct, ("Policy 13.2") Exh. I. The Rules of Conduct describe "violations that are considered serious and may result in disciplinary action or dismissal." Id. There are twenty-six violations that are "considered serious and may result in disciplinary action or dismissal." Id. The prohibitions relevant here are the "[u]se of vile, intemperate or abusive language . . . [t]hreatening . . . other employees [and] "[f]ighting, horseplay, or disorderly conduct[.]" Id. The Employee Handbook, also contains a "Rules of Conduct" provision which provides that "[s]erious infractions (for example . . . fighting . . . ) may result in immediate discharge." See Employee Handbook ("Exh. H") at 20. Plaintiff testified that "everybody," including herself understood that fighting was prohibited and that an employee who fought or hit another employee "gets fired." Clarke Dep. 203-04, 270.

**The January 17, 2002 Altercation**

Plaintiff was transferred in 1997 to the Medical Records Department as a File Clerk

where Noel Edie was one of plaintiff's co-workers. Exh. J; Clarke Dep. 110. On January 17,

2002, plaintiff fought with Edie, during which she testified she called Edie a "faggot" and a

"faggot bitch." Plaintiff testified:

A: And I said no, I'm sick and tired of him. He's a fag. Because he talks a lot. . . .
Q: Well, you said fag. Did you call him a name other than fag?
A: Bitch was the other one I think. Faggot bitch, yes.

Id. 391-94. Later that same day the fight resumed. According to a security incident report and a

statement by Noel Edie, when Edie attempted to telephone security, plaintiff grabbed the

telephone and slammed it down on to the ground. Security Incident Report, ("Exh. K");

Statement by Noel Edie ("Exh. L"); Clarke Dep. 404-05. Edie stated he attempted to walked

away from plaintiff, called out for security and told plaintiff to "get out of my face." Exh. L;

Clarke Dep. 407-08.

Edie averred that plaintiff continued to follow him, calling him a "pussy" and a "little

fag." Exh. L; Clarke Dep. 407-08. Plaintiff then threw paper and a Plexiglass partition at Edie.

Exh. L; Exh. K; Interview with MRD Evening Staff on 1/18/02 ("Exh. 2"). Edie stated that

plaintiff "started to punch me in my chest." Exh. L; Exh. 2. Plaintiff states that she doesn't

"remember everything exactly" but denies throwing the partition or papers at Edie. Clarke Dep.

403-06. Although plaintiff denies fighting with or striking Edie, she admits that she grabbed the

telephone and threw it to the floor in anger and that she "shoved" Edie in the Chest with both

hands. Id.

When Security Supervisor Elias DeLiz arrived at the scene, he had to physically restrain

plaintiff to keep her away form Edie. See Statement by Elias Deliz ("Exh. M"). Deliz also stated, "I could hear Mr. Edie yelling 'Get away from me, get away from me.' Ms. Clarke continued to yell and continued to try and get at Mr. Edie, at this point I had to get in front of [security officer] Dunson to assist in getting Ms. Clarke away from Mr. Edie." Id. It is undisputed that Edie did not initiate any physical contact with plaintiff and that Edie tried to get away from plaintiff once the fight started. Clarke Dep. 410; Exh. L; Exh. K; Exh. 2.

**Investigation and Termination**

Security sent both Clarke and Edie home after interviewing them. Exh. K. On January 18, 2002 the Associate Director of Medical Records, Gethel Marks, conducted an investigation into the incident and interviewed witnesses Carl Barrow, Louis Johnson, Horace Kirby, Daniel Paez, Al Dyer, Gloria Williams and William Nelley. Marks Decl. ¶ 10; Exh. 2.

Marks avers:

> Witness Nelley informed me that he saw Ms. Clarke throwing papers at Mr. Edie and then punching him in the chest. Mr. Nelley also told me that Ms. Clarke threw the charts on the floor and verbally abused Mr. Edie. Another witness, Mr. Barrow, told me that Ms. Clarke was "ballistic," that she was throwing charts to the floor, that she threw a Plexiglass partition at Mr. Edie, that Edie showed restraint, and that a Security Officer had to pull her away from Mr. Edie. Witness Paez told me that he saw Ms. Clarke throwing charts to the floor, and that he saw Ms. Clarke grab Mr. Edie by his shirt and then throw a Plexiglass partition at him. Mr. Edie reported to me that after throwing a telephone to the floor, Ms. Clarke threw a stack of papers at him and punched him in the chest. Witnesses Johnson, Dyer and Williams all stated that Edie tried to get away from Clarke during the incident, but Clarke kept pursuing him.

Marks Decl. ¶ 10

Marks found that plaintiff had initiated the altercation with Edie, had physically assaulted and verbally abused him, and that Edie had tried to avoid the altercation. Based on these findings, Marks found plaintiff's conduct serious enough to warrant her termination. Marks

7

Decl. ¶ 12. Marks states that she "consulted with Mount Sinai's Labor Relations department about the results of my investigation and my opinion that Ms. Clarke should be discharged. Labor Relations agreed that discharge was warranted." Id. at ¶ 13. Marks further avers that Mr. Gomez, plaintiff's supervisor, "did not participate in making the decision to discharge Ms Clarke. I did not consult with Mr. Gomez about my decision to terminate Ms. Clarke's employment and Mr. Gomez had no influence over my decision. Further, Mr. Gomez did not participate in conducting the investigation of the incident." Id. at ¶ 14. On January 24, 2002, plaintiff was discharged for the January 17, 2002 assault on Edie. Id. at ¶ 15.

### Plaintiff's Post Termination Actions

Plaintiff's Union filed a grievance on her behalf and on February 25, 2002, a Step-III grievance hearing was held contesting plaintiff's termination. Exh. S: Exh. T; Exh. R; Clarke Dep. 252. Plaintiff, her Union representatives, Marks, Gomez, Edie, DeLiz and Nelley all testified at the hearing. Exh. T. Although plaintiff testified at her deposition that she was given the opportunity to speak about the events leading up to her discharge, she stated that "nobody listened to me." Id. 251-58. Plaintiff also stated that she made no mention of sexual harassment at the grievance hearing because "nobody asked her" and that nobody would give her the chance to speak. Clarke Dep. 256. Plaintiff's grievance was denied and her termination was upheld. Exh. S.

On or about November 5, 2002, plaintiff filed a charge of discrimination with the New York State Division of Human Rights ("NYSDHR") alleging that her supervisor, Jose Gomez had sexually harassed her and that she was terminated because she refused to submit to his advances. Exh. U; Clarke Dep. 366-68. In a statement to the NYSDHR, plaintiff alleges:

8

I became an employee under Jose Gomez in 1999. During this year, I had encountered many occasions when Mr. Gomez would say horrible and very graphic, unlawful sexual remarks towards me. It all started when he asked me if I wanted to leave early. In the beginning, it started off as minor sexual comments, such as *"When you and me gonna get together?"* As time went on the remarks got worse Mr. Gomez would say thing like *"I want to eat your pussy"* and at the same time he would perform sexual jesters like licking out his tongue at me. These comments would be said all the time like *"one hand washes the other," "I want you and me to fuck"* all while grabbing his crotch area. Another time, he would follow me to the elevator and he would once again grab his crotch area and say *"Why are you bullshitting me, when are we gonna fuck."* On many occasions when I was going to dinner Mr. Gomez tried to grab my butt in the hallway area. I immediately brushed his hand away and told him to stop. *"Don't do that to me."* Having to work in this environment and being harassed by Mr. Gomez frequently I felt traumatized mentally, emotionally and spiritually.

Unnumbered pages annexed to plaintiff's complaint dated April 17, 2003 (emphasis and italic in the original).

After an investigation, the NYSDHR determined that there was no probable cause for plaintiff's claim of sexual harassment. The NYSDHR found:

> no evidence, including witness testimony to corroborate that the Complainant was sexually harassed as she alleges. Further, the Complainant admitted not reporting the behaviors she perceived as sexually harassing to the Respondent according to its policy and procedures. Hence, the Complainant failed to provide the Respondent an opportunity to address her concerns during her employment. The Division takes particular note that regardless of Complainant's failure to report the sexual harassment internally, the Respondent did investigate Complainant's claims against one of its supervisors, when it received the Complainant's complaint. Ultimately, it found no support of Complainant's claims.

Determination and Order After Investigation, (Exh. V). The U.S. Equal Employment Opportunity Commission adopted the NYSDHR findings, (Exh. W).

On January 31, 2005, plaintiff filed the instant action. Plaintiff alleges Gomez began to harass her when he became plaintiff's supervisor in September 1999. Clarke Dep. 45-53.

9

Plaintiff alleges Gomez sexually propositioned her and made lewd comments. Id. 53. For example, plaintiff states that Gomez would "lick a tongue now and then. You know, say your–I'll say derriere, because I don't want to say that word. It's embarrassing to me. You know, he would say, oh, your derriere looks nice and, you know, he would continue to say the same old things. You know. It's the truth. And he's been doing it for many years . . ." Id. Plaintiff was unclear when the events with Gomez transpired.[5] However, plaintiff stated several times that Gomez's harassing behavior occurred "all the time, all the time" up to the day she was terminated. Id. 47-49.

Plaintiff filed the instant complaint on January 31, 2005. Defendant answered the complaint and the parties conducted discovery. At the conclusion of discovery, defendant moved for summary judgment and plaintiff opposed the motion.

## STANDARD OF REVIEW

Summary judgment should be granted if the pleadings, depositions, answers, interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56( C). A fact is material if it is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could

---

[5] Plaintiff stated that at that time: "I really don't remember. I was really messed up. I was drinking a lot of alcohol. I was messed up. I was on psych drugs. The psych drugs didn't mess me up. It was my emotional state that messed me up. . . Everybody was talking about it. They were saying I was crazy. . . .I had to take [medication] or else I wouldn't have been in control. You know, I wouldn't even have lasted that long." Clarke Dep. 50-51.

return a verdict for the nonmoving party.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir. 1997) (quoting Anderson, 477 U.S. at 248 ); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Celotex Corp. v. Cadrett, 477 U.S. 317, 322 (1986). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000). For the purposes of summary judgment, the facts here are viewed in the light most favorable to plaintiff.

"An adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Matsushita, 475 U.S. at 586-87 (1986). In other words, the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. Anderson, 477 U.S. at 257. "Conclusory allegations, conjecture, and speculation ... are insufficient to create a genuine issue of fact." Niagra Mohawk Power Corp. v. Jones Chemical, Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998)). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Id. (quoting Anderson, 477 U.S. at 252).

Finally, "[w]here the non-moving party is proceeding *pro se*, the court must interpret that party's supporting papers liberally, that is, interpret them 'to raise the strongest possible arguments that they suggest.'" Forsyth v. Fed'n Empl. & Guidance Serv., 409 F.3d 565, 569 (2d Cir. 2005) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

11

# DISCUSSION

## TITLE VII

### 1. Plaintiff's Claims Against the Individual Defendants Should be Dismissed

There is no individual liability under Title VII. See Mandell v. County of Suffolk, 316 F.3d 377 (2d Cir. 2003) ("under Title VII individual superiors are not subject to liability."); Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995) Claims asserted against individual defendants under Title VII are routinely dismissed. See Farulla v. New York School Const. Authority, 277 F. Supp. 2d 140, 141 (E.D.N.Y. 2003). As there is no other basis for plaintiff's complaint against the individuals named herein, plaintiff's Title VII claims against defendants Jose Gomez, Grethel Marks, Officer Deliz and Ms. Thompson should be dismissed.

### 2. Plaintiff's Sexual Harassment Claims

There are two types of sexual harassment claims under Title VII: 1) *quid pro quo* and 2) hostile work environment harassment. Leibovitz v. New York City Transit Auth., 252 F.3d 179, 188 (2d Cir. 2001); Tomka, 66 F.3d at 1304-05; see also Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 73 (1986) ("a claim of 'hostile environment' sex discrimination is actionable under Title VII"). "Although the terms '*quid pro quo*' and 'hostile work environment' do not appear in the text of Title VII, they are useful to distinguish between 'cases involving a threat which is carried out and offensive conduct in general.'" Mormol v. Costco Wholesale Corporation, 364 F. 3d 54, 57 (2d Cir. 2004) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 753 (1998)). "The distinction between the two forms of sexual harassment serves to instruct that Title VII is violated

12

by either explicit or constructive alterations in the terms or conditions of employment and to explain [that] the latter must be severe or pervasive." Id. Plaintiff's complaint and opposition papers to defendant's motion, liberally construed, allege both *quid pro quo* and hostile work environment claims. See Karibian v. Columbia Univ., 14 F. 3d 773, 777 (2d Cir. 1994).

### a. Plaintiff's *Quid Pro Quo* Harassment Claim

"*Quid pro quo* harassment occurs when submission to or rejection of [improper sexual] conduct by an individual is used as the basis for employment decisions affecting such individual." Karibian, 14 F.3d at 777 (internal citations omitted). In order to present a *prima facie* case of *quid pro quo* harassment, plaintiff must show a "tangible employment action," i.e., that an "explicit ... alteration[ ] in the terms or conditions of employment" occurred because an employee refused to submit to sexual advances. Schiano v. Quality Payroll Systems, 445 F. 3d 597, 604 (2d Cir. 2006) (quoting Mormol, 364 F.3d at 57). "A tangible employment action, as defined by the Supreme Court, 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Mormol, 364 F.3d at 57 (quoting Burlington Indus. Inc. v. Ellerth, 524 U.S. 742, 761 (1988)).

In addition, a *quid pro quo* harassment claim requires that the harasser be the plaintiff's supervisor or the person who "wields the employer's authority to alter the terms and conditions of employment . . . " Karibian, 14 F. 3d at 777; Lange v. Town of Monroe, 213 F. Supp. 2d 411, 423 (S.D.N.Y. 2002). Plaintiff must show that the refusal to submit to a supervisor's demands caused a tangible negative employment action. Ellerth, 524 U.S. at 753; Mormol, 364 F. 3d at 57. Here,

13

plaintiff alleges that she was terminated because she rebuffed her supervisor's sexual advances. However, without "some evidence of a causal connection between the alleged sexual harassment and [plaintiff's] termination, the plaintiff's *quid pro quo* sexual harassment claim must be dismissed." Tabachnik v. Jewish Theological Seminary of America, No. 03 Civ. 2759 (HB), 2004 WL 414826 *2 (S.D.N.Y. March 4, 2004); see also Hamilton v. Bally of Switzerland, No. 03 Civ. 5685 (GEL); 2005 WL 1162450 (S.D.N.Y. April 17, 2005) (Summary judgment granted when plaintiff "failed to create a genuine issue of material fact as to any linkage between her rejection of [her supervisor's] perceived sexual advances" and her subsequent termination).

Plaintiff's *quid pro quo* sexual harassment claim cannot withstand defendant's motion for because she has made no showing of a causal connection between her rejection of her supervisor's perceived sexual advances and her termination. Grethel Marks investigated the incident that lead to plaintiff's termination and made the decision to discharge plaintiff based upon her findings. Marks Decl. ¶ 12. Marks unequivocally states that "Ms. Clarke never reported any sexual harassment by Mr. Gomez to me. I never saw Mr. Gomez engage in any conduct toward Ms. Clarke that was sexual in any way or harassing in any way." Marks Decl. ¶ 5. There is nothing in the record to link plaintiff's rejection of her supervisor's alleged sexual advances to Marks' decision. Marks avers "[M]r. Gomez did not participate in making the decision to discharge Ms. Clarke. I did not consult with Mr. Gomez about my decision to terminate Ms. Clarke's employment, and Mr. Gomez had no influence over my decision. Further, Mr. Gomez did not participate in conducting the investigation of the incident." Marks Decl. ¶ 14.

Moreover, plaintiff acknowledged during her deposition that Gomez did not have the authority to fire her:

> Q: So nobody who is an individual supervisor like Jose Gomez can by himself or herself fire somebody, correct?
>
> A: No, I don't believe so. The collective bargaining explains it. Everything has a rule, 1199 members. . . . I was protected on the collective. You know?
>
> Clarke Dep. 272-73.

Plaintiff has presented no evidence to establish that Gomez had any role in the decision to terminate her. As plaintiff has failed to establish that there was any connection between her rejection of her supervisor's alleged sexual advances and her termination, plaintiff's *quid pro quo* sexual harassment claim should be dismissed.

## b. Plaintiff's Sexual Harassment/Hostile Work Environment Claim

Defendant argues that because plaintiff did not avail herself of the established procedures to complain of sexual harassment or a hostile work environment, she cannot hold defendant liable. In other words, by failing to complain to anyone about Gomez's alleged sexual advances during her employment, Gomez's conduct cannot be imputed to defendant.

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A work environment is considered hostile when it is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (citing Meritor, 477 U.S. at 65).

15

In defense of "employee claims of hostile work environment and constructive discharge, the employer may have recourse to the so-called Faragher/Ellerth affirmative defense." Ferraro v. Kellwood Co., 440 F.3d 96, 101 (2d Cir. 2006). In the Faragher and Ellerth decisions, the Supreme Court afforded employers an affirmative defense to hostile work environment claims. To invoke the Faragher/Ellerth defense, the employer must show that (a) it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (b) "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Id. (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998)).

However, the employer may raise the Faragher/Ellerth defense:

> only if one of two further elements is met: either (1) the employee's supervisor took no 'tangible employment action,' which involves an official company act, against the employee; or (2) any tangible employment action taken against the employee was not part of the supervisor's discriminatory harassment. Otherwise, the employer is strictly liable for the supervisor's misconduct.

Ferraro, 440 F.3d at 101 (citing to Faragher, 524 U.S. at 808; Ellerth, 524 U.S. at 765).

As the Court has already found, Gomez took no tangible employment action against plaintiff and plaintiff's discharge was not related to Gomez's alleged sexual advances. Thus, defendant has properly raised Faragher/ Ellerth affirmative defense. Moreover, defendant has established that comprehensive anti-harassment policies and procedures were in place during the relevant period of plaintiff's employment. See supra 3-5.

Defendant has also satisfied the second prong of the Faragher/Ellerth affirmative defense

16

because plaintiff was aware of the defendant's anti-harassment policies and procedures and unreasonably failed to take advantage of them. Plaintiff conceded at her deposition that she was aware of defendant's anti-harassment policies and the mechanisms that existed by which she could complain. Plaintiff also testified that she attended an orientation that discussed sexual harassment in the workplace and that she was given defendant's written polices and procedures regarding complaints of sexual harassment. Although plaintiff stated that she "wasn't interested in reading any code of conduct," she concedes that these materials were available for her review. Plaintiff also acknowledged that she knew that defendant had an employee "compliance help line" available to her for lodging a complaint. Finally, the record evidence demonstrates that plaintiff was familiar with Union grievance procedures: she instituted a grievance in 1999 that resulted in a warning letter being removed from her employee file. Clarke Dep. 161-64, 171, 184-188, 200-11, 227-31; Exh. Y.

Plaintiff admits that she did not complain about Gomez's behavior while employed by defendant. Id. 96-98, 231-34. The following questions and answers were given at plaintiff's deposition:

> Q: Ms. Clarke, you never went to the labor relations department to file a complaint of sexual harassment, did you?
>
> A: No.
>
> Q: You never went to Grethel Marks to complain about sexual harassment, did you?
>
> A: No. Not about Jose. . . .
>
> Q: I think you said earlier you never called the help line to complain about sexual harassment, correct?
>
> A: Yes.
>
> Q. And you never visited the compliance and ethics office to complain about sexual harassment, did you?

17

A: No.

Q: And prior to your termination you never went to your union to complain that Jose Gomez was sexually harassing you, correct?

A: Yes I did.

Q: Prior to your termination, before you were fired. . . .

A: No. . . .

Q: So you never complained to your union about sexual harassment by a supervisor?

A: No.  He was the only one I complained about, about sexual harassment, to the union.

Q: Who?

A: After I got fired.

Clarke Dep. 231-33.

In addition, plaintiff made no mention of sexual harassment at the grievance hearing instituted by her Union to contest her termination.  Plaintiff's allegation that she was terminated not for fighting, but because she refused Gomez's sexual overtures is not supported by the record evidence.  Plaintiff admits she said nothing about sexual harassment---even to her Union representatives who were challenging her termination.  Id. 256-258.  It was not until ten months *after* her termination that plaintiff alleged sexual harassment was the true reason for her termination.  Exh. U.

A plaintiff may not circumvent the employer's Faragher/Ellerth affirmative defense by asserting conclusory allegations:

[E]very employee who feels harassed by a supervisor will at some level fear the inevitable unpleasantness which will result from complaining to the employer. Confrontation is by its very nature unpleasant. However, to allow an employee to circumvent the reasonable complaint requirements of Faragher and [Ellerth] by making conclusory allegations of feared repercussions[ ] would effectively eviscerate an affirmative defense which the Supreme Court clearly went to great

18

effort to craft in order to stem the tide of unwarranted lawsuits.

O'Dell v. Trans World Entertainment Corp., 153 F. Supp. 2d 378, 391 (S.D.N.Y. 2001) (quoting

Fierro v. Saks Fifth Avenue, 13 F. Supp. 2d 481, 492 (S.D.N.Y. 1998)); see also Leopold, 239

F.3d at 246 (assertion that plaintiff failed to avail herself of internal complaint procedures because

she feared "she would be fired for speaking up" was "conclusory" and thus failed "as a matter of

law to constitute sufficient evidence to establish that her fear was credible").

Plaintiff presents no evidence that she refrained from complaining about sexual

harassment because she feared retaliation. Plaintiff testified that she knew and understood that

defendant's anti-harassment policies protect employees who complain from retaliation. Id. 231.

In addition, plaintiff testified that she had made other complaints against co-workers without

repercussion. Id. 94-96. Finally, plaintiff had already been terminated at the time of the grievance

hearing and thus could have clearly raised her claim of sexual harassment without fear of

retribution.

Plaintiff alleges that Gomez's harassing behavior first began in September 1999 when he

became her supervisor. Plaintiff first complained of Gomez's harassment to the New York State

Division of Human Rights on November 5, 2002. The Court finds plaintiff unreasonably failed to

take advantage of any preventative or corrective opportunities provided by the employer to report

Gomez's harassment. See e.g., O'Dell, 153 F. Supp. 2d at 391 (finding employer had met

Faragher/Ellerth burden because employee waited almost a year to report harassment); Dayes v.

Pace University, No. 98 Civ. 3675 (WHP), 2000 WL 307382, *5 (S.D.N.Y March 24, 2000) (12

month delay in reporting harassment was unreasonable); Barua v. Credit Lyonnais-U.S. Branches,

19

No. 97 Civ. 7991 (JSR), 1998 WL 915892 at *5 (S.D.N.Y. December 30, 1998) (eighteen month delay to report harassment is unreasonable). In fact, plaintiff failed to report Gomez's alleged sexual harassment for approximately three years and failed to make any kind of complaint until ten months *after* she was discharged.

Even if plaintiff had, ad arguendo, presented evidence that Gomez did create a hostile work environment, defendant would be entitled to judgment as a matter of law based on the Faragher/Ellerth affirmative defense. Mount Sinai "has shown that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior and [plaintiff] unreasonably failed to take advantage of the preventative or corrective opportunities provided to her." Garone v. United Parcel Service, Inc., 436 F. Supp. 2d 448, 472 (E.D.N.Y. 2006). As such, plaintiff's hostile work environment claim should be dismissed.

The Court notes that plaintiff's opposition to defendants' motion for summary judgment consists of virtually a denial of every statement plaintiff made at her deposition. Plaintiff accuses defense counsel (and the Court) of altering her deposition testimony so that it contained only half-truths and lies. For example, plaintiff states:

> 14. Pages-104 line 3-6-7. Mr. Marshall never asked me what time it was. I gave that information myself. Pages 104, lines 10-11 were altered. Pages 105 5-4 He altered it. Pages 107 he altered my statements. Pages 109 were elaborated, I never said this-Q7, he never asked me. Line 17 I never said that. Pages 109 lines 19-20. never said that and he never asked me that question. Line 21-22 I never said that either. Pages 110: I never said it was in 1999. Pages 111 lines 14-16 the order was changed. Pages 111-112 Mr. Marshall left out everything. Pages 112 should of been on page 45. Pages 113 14-15 the order was changed. Pieces of 113-114 was changed. Pages 114 was altered, I never gave a number for that incidentally. Pages 114, 24-25 he never asked me that question. Pages 115 was altered lines 1-9. Pages 116, I never said the things we talked about. . . .

Third Response ¶ 4.

Plaintiff's attempt to invalidate her deposition testimony does not create a genuine issue of material fact to defeat summary judgment. Hamilton v. Bally of Switzerland, No. 03 Civ. 5685 (GEL), 2005 WL 162450 (S.D.N.Y. April 17, 2005) (citing to Meritor, 477 U.S. at 65). Plaintiff's opposition argues in essence that defendant's attorney, the State Division of Human Rights, her Union and this Court conspired to trick plaintiff and "make [plaintiff] look bad." See generally (Plaintiff's) Response to Motion. For example, plaintiff states:

> [t]he division of Human Rights never told me how they conducted their investigation, instead the representative treated me like a street dog and abused me, the same way I was abused by Judge Bloom. Can't anyone see there is a pattern of unlawful acts involved in my case!!! This is how he [defense counsel] was able to create this motion of judgment. Not one sentence is true in this motion of judgment and he can't prove it, this is why Mount Sinai don't want me to get a trial.

Third Response to David Marshall Motion of Judgment ("Third Response") at p. 2. Plaintiff also states: "[t]hroughout this whole case Mount Sinai, and David Marshall manipulated my answers and deliberately turned it into a parade of lies." Third Response at p. 4. Plaintiff posits: "[t]hey don't want me to get a fair trial. Mount Sinai Labor relations destroyed my employment records, and staged email messages to prolong this great evil they have done to me." Third Response at p. 3.

Plaintiff's submissions, although voluminous, are as base as they are conclusory. Plaintiff has not established a *prima facie* case of gender discrimination. As plaintiff has presented no evidence from which a reasonable jury could conclude that defendant terminated her as the result of sexual harassment, plaintiff's gender discrimination claims should be dismissed.

### 3. Plaintiff's Retaliation Claim

To establish a *prima facie* case of retaliation in violation of Title VII, plaintiff must present:

> evidence sufficient to permit a rational trier of fact to find [1] that . . . [s]he engaged in protected participation or opposition under Title VII, [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action.

Kessler v. Westchester County Dep't of Social Services, 461 F.3d 199, 205 (2d Cir. 2006)

(quoting Cifra v. General Electric Co., 252 F.3d 205, 216 (2d Cir. 2001)); see also Burlington

Northern & Santa Fe Railway Co. v. White, 126 S. Ct. 2405, 2415 (2006).

Plaintiff contends that defendant is giving her "bad job references" in retaliation for her

filing this employment discrimination action. Clarke Dep. 433-34. However, plaintiff admitted at

her deposition that she has no actual knowledge that defendant ever gave anyone any employment

reference regarding her. Plaintiff simply speculates that prospective employers are receiving poor

references from defendant because she is not getting hired. Id. As the Second Circuit has

explained, "to allow a party to defeat a motion for summary judgment by offering purely

conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial

in all Title VII cases." Meiri v. Dacon, 759 F.2d 989, 999 (2d Cir. 1985). Plaintiff cannot "defeat a

motion for summary judgment by offering purely conclusory allegations of discrimination." Id.;

McLee v. Chrysler Corp., 38 F.3d 67 (2d Cir. 1994) (reaffirming the availability of summary

judgment in discrimination cases). As plaintiff's retaliation claim is purely speculative and

conclusory, it should be dismissed.

## CONCLUSION

Accordingly, it is respectfully recommended that the defendants' motion for summary judgment should be granted and plaintiff's action should be dismissed. It is further recommended that the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from a judgment entered herein would not be taken in good faith. Coppedge v. United States, 369 U.S. 438 (1962).

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of Court. Any request for an extension of time to file objections must be made within the ten-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital District Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/S/

LOIS BLOOM
United States Magistrate Judge

Dated: June 28, 2007
Brooklyn, New York